## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **Hi-Crush Inc.**, *et al.*, | § | **Case No. 20-33495 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **Hi-Crush Permian Sand LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **Adversary No. _____** |
| | § | |
| **EOG Resources, Inc.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### HI-CRUSH PERMIAN SAND LLC'S ORIGINAL COMPLAINT

Hi-Crush Permian Sand LLC, a reorganized debtor in the above-captioned bankruptcy proceedings and plaintiff in this adversary proceeding ("***Hi-Crush***" or the "***Debtor***") files this Original Complaint against EOG Resources, Inc. ("***EOG***"), respectfully stating as follows:

### NATURE OF THE ACTION

1.      Hi-Crush brings this action to prevent EOG from shirking its contractual obligations and to protect Hi-Crush from losing no less than $▆▆▆▆ as a result of EOG's invalid contract termination and refusal to perform.

---

[1] The reorganized debtors in the bankruptcy cases, along with the last four digits of each Debtor's federal tax identification number, are: Hi-Crush Inc. (0530), OnCore Processing LLC (9403), Hi-Crush Augusta LLC (0668), Hi-Crush Whitehall LLC (5562), PDQ Properties LLC (9169), Hi-Crush Wyeville Operating LLC (5797), D & I Silica, LLC (9957), Hi-Crush Blair LLC (7094), Hi-Crush LMS LLC, Hi-Crush Investments Inc. (6547), Hi-Crush Permian Sand LLC, Hi-Crush Proppants LLC (0770), Hi-Crush PODS LLC, Hi-Crush Canada Inc. (9195), Hi-Crush Holdings LLC, Hi-Crush Services LLC (6206), BulkTracer Holdings LLC (4085), Pronghorn Logistics Holdings, LLC (5223), FB Industries USA Inc. (8208), PropDispatch LLC, Pronghorn Logistics, LLC (4547), and FB Logistics, LLC (8641). The Debtors' address is 1330 Post Oak Blvd, Suite 600, Houston, Texas 77056.

2.      Hi-Crush seeks declaratory relief and damages because EOG unjustifiably attempted to terminate the long-term Sand Purchase Agreement (defined below) between Hi-Crush and EOG (the "*Parties*").  Specifically, EOG sought to take advantage of Hi-Crush Inc.'s[2] June 2020 disclosure that Hi-Crush Inc. had defaulted on a *financial covenant* in its ABL Credit Facility, which could potentially trigger the acceleration of certain debt and note obligations.  Hi-Crush Inc. also disclosed, however, that it and certain affiliates had entered into a forbearance agreement with its ABL lenders, which forestalled the acceleration of its debt and note obligations. Ignoring the obvious effect of the forbearance agreement, EOG promptly sought to terminate the Sand Purchase Agreement under an early termination clause premised on Hi-Crush's "insolvency." EOG took the meritless position that Hi-Crush was insolvent even though nothing in the disclosure stated that Hi-Crush was insolvent or unable to pay its debts as they fell due.

3.      EOG's actions were a blatant attempt to avoid its firm obligation to purchase significant quantities of sand annually from Hi-Crush at a fixed price (or make specified shortfall payments if it failed to do so).  Hi-Crush quickly rejected EOG's purported notice of termination and demanded that EOG perform.  But EOG remained entrenched.

4.      EOG has refused to perform its purchase obligations not only for this year, but for the remaining ▮ years to come.  Additionally, EOG has refused to pay Hi-Crush the shortfall amounts owed under the agreement for EOG's failure to purchase requisite quantities of sand this year.  Because of EOG's blatant breaches, Hi-Crush will sustain millions in damages, which will continue to grow if EOG does not resume performance.  Accordingly, and in addition to monetary damages for this current year in the amount of $▮, Hi-Crush seeks (i) a declaratory judgment that the Sand Purchase Agreement remains in effect, (ii) a declaratory judgment that Hi-

---

[2] Hi-Crush Inc. is the parent company of Hi-Crush.

Crush properly assumed the Sand Purchase Agreement under 11 U.S.C. § 365, and (iii) an order

requiring EOG's specific performance of its contractual obligations.  In the alternative to specific

performance, Hi-Crush requests additional damages for the remainder of the agreement's term,

which amount to no less than $█████████.

## JURISDICTION AND VENUE

5.      On July 12, 2020, Hi-Crush Inc. and certain of its affiliates, including Hi-Crush

Permian Sand LLC, filed voluntary petitions for relief under chapter 11 of Title 11 of the United

States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern

District of Texas (the "Court" or "Bankruptcy Court").

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  This

adversary proceeding is commenced pursuant to (i) Bankruptcy Rules 7001(1), 7001(2), 7001(9),

(ii) section 105(a) and 365 of the Bankruptcy Code, and (iii) 28 U.S.C. § 2201.

7.      Pursuant to Federal Rule of Bankruptcy Procedure 7008 and Bankruptcy Local

Rule 7008-1, the Debtor consents to the entry of final orders or judgments by this Court if it is

determined that this Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

8.      The Court has personal jurisdiction over EOG because the actions giving rise to

this adversary proceeding occurred in Texas and because EOG has its principal place of business

in Texas.

9.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409.

## PARTIES

10.     The Debtor is a Delaware limited liability company having its principal place of

business at 1330 Post Oak Boulevard, Suite 600, Houston, Texas 77056.

11.     Defendant EOG is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Texas, with its principal place of business located at 1111 Bagby Street, Sky Lobby 2, Houston, Texas 77002.  Defendant may be served with process under Bankruptcy Rule 7004(b) through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## FACTUAL BACKGROUND

12.     Hi-Crush Inc. and its affiliates, including Hi-Crush, are a leading supplier of premium proppant (also known as "frac sand"), used in hydraulic fracturing of oil and gas wells, and logistics services to exploration and production companies, service companies, and pressure pumping companies. They own and operate six sand production facilities, with four in Wisconsin and two in West Texas. These facilities, coupled with Hi-Crush Inc.'s world-class processing technology and systems, allow Hi-Crush Inc. and its affiliates to provide high-quality proppant to their customers with preferred delivery to all major U.S. shale basins. EOG is one of those customers.

13.     EOG is engaged in the exploration and production of hydrocarbons with assets both abroad and in the United States, including in the Permian Basin of West Texas.  Upon information and belief, EOG utilizes frac sand during the process of drilling and completing unconventional oil and gas wells.

14.     On February 13, 2017, Hi-Crush[3] and EOG entered into a Sand Purchase Agreement, which was amended effective June 1, 2018 ("***Sand Purchase Agreement***") (attached

---

[3] The original party to the Sand Purchase Agreement was Permian Basin Sand Company, LLC, which was later acquired by Hi-Crush. In the Parties' June 1, 2018 First Amendment to the Sand Purchase Agreement, they agreed that all references to "Permian Basin Sand Company LLC" throughout the Sand Purchase Agreement shall be replaced by "Hi-Crush Permian Sand LLC" and all references to "PBS" throughout the Sand Purchase Agreement

EMF_US 82647477v4

hereto as <u>Exhibit 1</u>), and governed by Texas law. Sand Purchase Agreement, ¶ 10.   Upon information and belief, EOG entered into the Sand Purchase Agreement in order to obtain a reliable, long-term supply of premium frac sand at fixed prices.

### A.   Terms of the Sand Purchase Agreement

15.     Under the Sand Purchase Agreement, EOG is required to purchase a minimum amount of ███████████████ tons of sand per Contract Year ("***Annual Minimum***") at a purchase price of $███ per ton.  Sand Purchase Agreement, ¶¶ 1(a), 2(a)(i).  A "Contract Year" is any one calendar year beginning on January 1 and ending on December 31, with the term of the agreement lasting until at least ██████████████. *Id.* ¶¶ 1(h)(i), (3)(a).  As of now, that term, referred to as the "Primary Term," has neither been extended nor shortened.  *Id.* ¶ 3(a).

16.     The Sand Purchase Agreement is akin to a "take or pay" agreement. Should EOG fail to purchase and take delivery of the Annual Minimum during any Contract Year, the Sand Purchase Agreement obligates EOG to make annual shortfall payments to Hi-Crush.  *See id.* ¶ 2(b). These shortfall payments are calculated based on a contractually-agreed upon formula of ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████  *Id.* ¶ 2(b).  For further clarity, the Sand Purchase Agreement provides an example of applying that formula: ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.*

---

shall be replaced by "Hi-Crush." First Amendment to Sand Purchase Agreement (included with <u>Exhibit 1</u>), Section 1.01.

EMF_US 82647477v4

17.     Although the term of the Sand Purchase Agreement extends through ███, the agreement contains certain early termination provisions, but only in the event particular events occur or certain accelerated shortfall payments are made. *See, e.g., id.* ¶¶ 3(b), 7(b).  In an apparent attempt to avoid making any shortfall payments upon termination, EOG purportedly terminated the Sand Purchase Agreement under Section 7(b), which provides as follows:

> In the event either Party shall (i) make an assignment or any general arrangement for the benefit of creditors; (ii) file a petition or otherwise commence, authorize, or acquiesce in the commencement of a proceeding or case under any bankruptcy or similar law for the protection of creditors or have such petition filed or proceeding commenced against it; ***(iii) otherwise become bankrupt or insolvent (however evidenced); (iv) be unable to pay its debts as they fall due; or*** (v) have a receiver, provisional liquidator, conservator, custodian, trustee or other similar official appointed with respect to it or substantially all of its assets, then the other Party shall have the right to immediately terminate this Agreement.

*Id.* ¶ 7(b) (emphasis added).  As explained below, EOG had no basis to rely on Section 7(b).

**B.   The Parties' Performance**

18.     For Contract Years 1 and 2, both parties fulfilled their contractual duties, with EOG purchasing and Hi-Crush selling and delivering the Annual Minimum of sand.  However, at times EOG resisted complying with its purchase obligations, necessitating significant effort on Hi-Crush's part to ensure EOG's performance.  In hindsight, EOG's reluctance to meet its contractual obligations were but a preview of EOG's conduct to come.

19.     To date and for Contract Year 3, EOG has purchased only ███ tons of sand, less than half the Annual Minimum.  Accordingly, for EOG to meet its required Annual Minimum, it must purchase ███ tons of sand by December 31, 2020, or pay $███ in shortfall damages if it fails to order more sand within the next 41 days.  *See* Sand Purchase Agreement ¶¶ 1(a), 1h(i), 2(b).  Additionally, the Sand Purchase Agreement remains in full force and effect

for ███████████ years, through the end of ████, obligating EOG to purchase ████████ tons of sand annually. *Id.* ¶ 3(a).

20.    Hi-Crush has always honored its duties under the Sand Purchase Agreement by satisfying all of EOG's frac sand orders.  And Hi-Crush remains ready, willing, and able to continue that performance.  In light of recent events, the same cannot be said of EOG.

## C.  Hi-Crush Inc.'s 10-Q

21.    On June 25, 2020, Hi-Crush Inc., the parent of Hi-Crush, filed a quarterly 10-Q (attached, in relevant part, hereto as Exhibit 2), wherein it provided a narrative of the enterprise's financial situation and expectations for the future.  In particular, it described Hi-Crush Inc.'s decrease in borrowing base and its associated default under the ABL Credit Facility "due to its failure to be in compliance with the springing fixed charge coverage ratio ***financial covenant*** under the ABL Credit Facility." 10-Q at p.11 (emphasis added).  In the 10-Q, Hi-Crush Inc. noted that the default "***could result*** in the acceleration of all obligations and termination of all commitments thereunder at the option of the lenders" and potentially other Senior Note indebtedness becoming accelerated and due.  *Id.* (emphasis added).  Moreover, it recognized that there was not sufficient liquidity to pay the $450,000,000 principal amount of the Senior Notes (as described therein), "***should they be accelerated***" in the future. *Id.* (emphasis added).

22.    However, those debts were not accelerated.  Instead, Hi-Crush Inc. and certain of its affiliates entered into a forbearance agreement and amendment to the ABL Credit Facility, whereby the lenders agreed to forebear from exercising default-related rights and remedies.  *Id.*  In turn, by avoiding acceleration, this forbearance agreement made it easier for Hi-Crush to continue paying debts as they became due in the ordinary course of business.

EMF_US 82647477v4

23.     Hi-Crush Inc. also made disclosures in the 10-Q concerning the engagement of advisors and negotiations relating to a potential prearranged bankruptcy filing, and that "[r]egardless of whether the terms and conditions of a prearranged filing can be agreed upon with the debt holders, the Company expects to file for protection from its creditors under the United States Bankruptcy Code." *Id.* at p.12.   Hi-Crush Inc. did not disclose a specific date for a bankruptcy filing or indicate that such a filing was imminent.

**D.   EOG's Improper Termination**

24.     EOG took note of Hi-Crush's affiliate's 10-Q filing, albeit opportunistically.  Two days after the filing and by letter dated June 27, 2020, EOG sent Hi-Crush a purported notice of immediate termination of the Sand Purchase Agreement ("***Termination Notice***") (attached hereto as Exhibit 3).  In its letter, EOG attempted to base its termination on Section 7(b)(iii) and 7(b)(iv) of the Sand Purchase Agreement and "Hi-Crush's insolvency and inability to pay its debts as they fall due."  *See* Termination Notice.

25.     For context, Section 7(b)(iii) and (iv) of the Sand Purchase Agreement provides: "In the event either Party shall . . . (iii) otherwise become bankrupt or insolvent (however evidenced); [or] (iv) be unable to pay its debts as they fall due . . ., then the other Party shall have the right to immediately terminate this Agreement." Sand Purchase Agreement ¶¶ 7(b)(iii), (iv).

26.     As supposed evidence that Hi-Crush was insolvent or unable to pay its debts, EOG referenced the 10-Q's disclosure that the company was in default under its ABL Credit Facility; had entered into a forbearance agreement; "***absent an extension*** of the Forbearance Agreement," would be in default under its Senior Notes "should they be accelerated;" and had "plans to file for bankruptcy."  *See* Termination Notice (emphasis added).

-8-

27.     However, EOG's Termination Notice notably omits the portion of the disclosure wherein the default under the ABL Credit Facility was described as a covenant default, rather than a payment default.  Unlike a payment default, a covenant default does not equate to an inability or failure to pay.

28.     Likewise, EOG failed to point to any debts that Hi-Crush had failed to pay or was unable to pay when due.  This is likely because there were not any debts due or coming due in the near future that Hi-Crush was not able to pay, especially in light of the referenced forbearance agreement that forestalled acceleration of the Senior Notes.   Instead, EOG cherry-picked projections from the 10-Q of hypothetical risks – "*absent an extension* of the Forbearance Agreement," "*should* they be accelerated" – rather than the actual course of events. Termination Notice (emphasis added).

29.     Further, the 10-Q provided no basis for EOG to contend that Hi-Crush Inc. and its affiliates, including Hi-Crush, were insolvent.  To the contrary, the consolidated balance sheet in the 10-Q showed that assets exceeded liabilities by over $250,000,000 during the period referenced therein.  10-Q at p.4.

30.     The 10-Q disclosure relied upon by EOG as the only basis for its termination of the Sand Purchase Agreement is not evidence of insolvency of or inability to pay debts as they fall due by either Hi-Crush Inc. (the entity who filed the 10-Q) or Hi-Crush (the entity who is the counterparty to the Sand Purchase Agreement).

31.     Given the baseless nature of EOG's Termination Notice, Hi-Crush disputed it, and rightly so.  On July 1, 2020, Hi-Crush sent a letter responding to EOG's Termination Notice ("*Response Letter*") (attached hereto as Exhibit 4) identifying it for what it was – ineffective. "EOG's letter purports, albeit ineffectively, to terminate the Sand Purchase Agreement. . . . The

Agreement is still in effect, and Hi-Crush expects EOG to honor its obligations under the Agreement." Response Letter.

32.     However, following that Response Letter, EOG has shown no intent to honor its contractual obligations under the Sand Purchase Agreement. EOG has not ordered one ounce of frac sand, has stated that it will not pay any shortfall damages at the end of 2020, and has objected to Hi-Crush's assumption of the agreement. Despite this, Hi-Crush remains ready, willing, and able to perform.

**E.   Hi-Crush's Bankruptcy**

33.     On July 12, 2020, the Debtor filed voluntary petitions in this Court commencing cases for relief under chapter 11 of Title 11 of the United States Code.

34.     On September 4, 2020, Hi-Crush included the Sand Purchase Agreement on the *Notice of Cure Amounts* (ECF No. 344) for agreements it intended to assume pursuant to the *Joint Plan of Reorganization for Hi-Crush Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (the "***Plan***"). Two weeks later, EOG filed an *Objection to Assumption of the Sand Purchase Agreement* ("***Cure Objection***") (ECF No. 386), contending that the agreement had been terminated pre-petition and could not be assumed.

35.     On September 23, 2020, the Court entered an order ("***Confirmation Order***") confirming the Plan. Paragraph 62 of the Confirmation Order preserved the Parties' dispute regarding whether Hi-Crush could assume the Sand Purchase Agreement.[4] Thus, instead of litigating the validity of EOG's Notice of Termination during the pendency of Hi-Crush's bankruptcy proceedings, Hi-Crush and EOG agreed to delay resolution until after Plan

---

[4] *See, e.g.,* Confirmation Order (ECF No. 420) ¶ 62 ("Notwithstanding any other provision in this Confirmation Order or the Plan to the contrary, nothing in this Confirmation Order or the Plan . . . shall eliminate, alter or impair any of the objections of EOG Resources Inc. . . . including, but not limited to EOG's position that the Sand Purchase Agreement . . . was properly terminated prior to the Petition Date.").

confirmation.  Hi-Crush now commences this action to address this unresolved issue by seeking a declaratory judgment that Hi-Crush properly assumed the Sand Purchase Agreement and that it remains in full force and effect.

**F.   EOG Should Not Be Able to Avoid its Contractual Obligations**

36.     Upon information and belief, EOG's end goal in attempting to terminate the Sand Purchase Agreement was to avoid its fixed, long-term obligations to Hi-Crush so that EOG would be free to purchase lower quantities of frac sand on more favorable terms (given the current, depressed market conditions for frac sand).  In order to accomplish this objective, EOG seized upon and contorted a public disclosure in order to manufacture the claim that Hi-Crush was insolvent and unable to pay its debt as they came due.   However, EOG's opportunistic attempts should not be rewarded, and certainly should not leave Hi-Crush penalized for disclosing a covenant default and forbearance agreement to the market.

37.     Simply put, EOG had no legitimate basis for its contention that Hi-Crush was insolvent or unable to pay its debts as they became due at the time it sent the Termination Notice. These contentions were false and, as a result, EOG's attempt to terminate the Parties' agreement was invalid.  Hi-Crush has been damaged by EOG's refusal to perform its obligations under the Sand Purchase Agreement, both for this year and in the four years to come.  Accordingly, Hi-Crush asserts the following claims for relief to remedy the harm EOG has inflicted upon Hi-Crush.

**CLAIMS FOR RELIEF**

**COUNT I**

***(Declaratory Judgment that EOG's Purported Termination
Under Section 7(b) Was Invalid)***

38.     Hi-Crush realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

-11-

39.     Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

40.     An actual, justiciable controversy exists between Hi-Crush and EOG regarding (i) the validity of EOG's alleged termination of the Sand Purchase Agreement under Section 7(b), and (ii) whether Hi-Crush can assume the Sand Purchase Agreement under 11 U.S.C. § 365 notwithstanding EOG's Termination Notice. This dispute is evidenced by EOG's Termination Notice and Hi-Crush's Response Letter, each of which asserted contradictory positions as to the effect of EOG's Termination Notice, and EOG's Cure Objection.

41.     EOG had no right to terminate the Sand Purchase Agreement under Section 7(b), and any attempts to do so were invalid.  EOG contends that, at the time of the Termination Notice, Hi-Crush was insolvent or unable to pay its debts as they fell due.  *See* Termination Notice.  EOG pointed to Hi-Crush Inc.'s 10-Q filing as the sole support for these brazen claims.  But, as described herein, EOG's reliance on the 10-Q was misplaced, and it shows that EOG used the 10-Q as a mere pretext for termination.  Indeed, EOG's assertions regarding Hi-Crush's insolvency and inability to pay its debts were baseless assumptions, which were contrary to the then-existing facts and circumstances.  In turn, EOG has no support in law for its attempts at terminating the Sand Purchase Agreement under Section 7(b), and Hi-Crush had the right to (and did) assume this agreement.

42.     Accordingly, Hi-Crush requests that the Court enter a declaratory judgment holding that:

(i)     EOG's attempted termination of the Sand Purchase Agreement under Section 7(b) was invalid;

(ii)     The Sand Purchase Agreement remains in full force and effect for the remainder of its Primary Term, as defined therein;

(iii)    Hi-Crush had the right to assume the Sand Purchase Agreement under 11 U.S.C. § 365 and did properly assume it during the course of the bankruptcy case;

(iv)    The cure amount for Hi-Crush's assumption of the Sand Purchase Agreement is $0; and

(v)     Hi-Crush is entitled to its reasonable attorneys' fees and costs as provided for under Section 37.009 of the Texas Civil Practice and Remedies Code, and reasonable attorneys' fees and costs as provided for by Section 17 of the Sand Purchase Agreement.

## <u>COUNT II</u>

### *(Breach of Contract – Sand Purchase Agreement)*

43.     Hi-Crush realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

44.     The Sand Purchase Agreement was a valid, binding, and enforceable agreement between Hi-Crush and EOG.

45.     Hi-Crush performed all of its obligations under the Sand Purchase Agreement by selling and delivering sand to EOG, which EOG accepted.

46.     EOG breached the Sand Purchase Agreement by refusing to order the Annual Minimum of sand for Contract Year 3 or make requisite shortfall payments. *See* Sand Purchase Agreement, ¶¶ 1(a), 2(b).

47.     EOG also breached the Sand Purchase Agreement by purportedly terminating it under Section 7(b) without a valid basis to do so.

48.     EOG's breaches injured Hi-Crush, which has sustained damages of at least $█████ for Contract Year 3, plus millions of additional damages that will accrue if the

EMF_US 82647477v4

agreement is not assumed and EOG is not compelled to perform throughout the remaining term of the agreement.

49.     As pleaded herein, Hi-Crush has performed its obligations under the Sand Purchase Agreement and remains ready, willing, and able to continue to perform under the Sand Purchase Agreement.  Accordingly, Hi-Crush seeks specific performance of the Sand Purchase Agreement by EOG for the remainder of the Primary Term, as defined therein.

50.     Alternatively, and should EOG not be ordered to specifically perform the remainder of the Primary Term of the Sand Purchase Agreement, then EOG's breach will result in damages of at least $█████████.

51.     Because of EOG's breach, Hi-Crush seeks and is entitled to its reasonable attorneys' fees and costs as provided for under Chapter 38 of the Texas Civil Practice and Remedies Code, and reasonable attorneys' fees and costs as provided for by Section 17 of the Sand Purchase Agreement.

## CONDITIONS PRECEDENT

52.     All conditions precedent to filing this suit have occurred or have been performed.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor respectfully demands judgment against EOG and requests the following relief:

    a.  Entry of a declaratory judgment that EOG's attempted termination of the Sand Purchase Agreement under Section 7(b) was invalid;

    b.  Entry of a declaratory judgment that the Sand Purchase Agreement remains in full force and effect for the remainder of its Primary Term, as defined therein;

    c.  Entry of a declaratory judgment that Hi-Crush had the right to assume the Sand Purchase Agreement under 11 U.S.C. § 365 and did properly assume it during the course of the bankruptcy case;

EMF_US 82647477v4

d. Entry of a declaratory judgment that the cure amount for Hi-Crush's assumption of the Sand Purchase Agreement is $0;

e. Entry of a declaratory judgment that Hi-Crush is entitled to its reasonable attorneys' fees and costs as provided for under Section 37.009 of the Texas Civil Practice and Remedies Code, and attorneys' fees and costs as provided for by Section 17 of the Sand Purchase Agreement;

f. An award of damages in the amount of at least $███████ for EOG's breach of its obligation to buy sand from Hi-Crush and failure to pay shortfall damages for Contract Year 3;

g. Specific performance requiring EOG to perform under the Sand Purchase Agreement for the remainder of the Primary Term, as defined therein; in the alternative, an award of additional damages in the amount of at least $████████ for EOG's refusal to buy its Annual Minimum and failure to pay shortfall damages owed for the remaining term;

h. Pre- and post-judgment interest, costs of court, and reasonable attorneys' fees incurred in prosecuting this adversary proceeding; and

i. All such other relief as the Court may find just and proper, including but not limited to, equitable relief under 11 U.S.C. § 105.

Dated: November 20, 2020          Respectfully submitted,

*/s/ Joseph W. Buoni*
Joseph W. Buoni (TX Bar No. 24072009)
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Ashley S. Lewis (TX Bar No. 24079415)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:    (713) 220-4200
Fax:    (713) 220-4285
Email:  josephbuoni@huntonak.com
          taddavidson@huntonak.com
          ashleyharper@huntonak.com
          ashleylewis@huntonak.com

*Counsel for Plaintiff Hi-Crush Permian Sand, LLC*

EMF_US 82647477v4

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 20, 2020, a true and correct copy of the foregoing document was served (i) by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices; and (ii) via electronic mail on counsel for EOG, Sarah Link Schultz and David F. Staber at sschultz@akingump.com and dstaber@akingump.com.

*/s/ Joseph W. Buoni*
Joseph W. Buoni